1
2
3
4
5
6

Joseph L. Oliva, Esq. (SBN 113889)
Ryan M. Simone, Esq. (SBN 299844)
MORRIS, SULLIVAN & LEMKUL, LLP
9915 Mira Mesa Boulevard, Suite 300
San Diego, CA  92131
Telephone:  858-566-7600
Facsimile: 858-566-6602
oliva@morrissullivanlaw.com
simone@morrissullivanlaw.com

7
8

Attorneys for Plaintiffs, KINGSLEY MANAGEMENT CORP., KMC CA
MANAGEMENT, LLC, and VILLA CAJON MHC, L.P.

9
10
11

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12 KINGSLEY MANAGEMENT CORP.; <br> 13 a Utah corporation; KMC CA <br> MANAGEMENT, LLC; a Utah limited <br> 14 liability company; and VILLA CAJON <br> 15 MHC, L.P.; a Utah limited partnership. <br> 16    Plaintiffs, <br> 17 <br> 18 v. <br> 19 OCCIDENTAL FIRE & CASUALTY <br> COMPANY OF NORTH CAROLINA, <br> 20 DBA NORTH CAROLINE <br> 21 OCCIDENTAL FIRE & CASUALTY <br> COMPANY; a North Carolina <br> 22 corporation. <br> 23 <br> 24    Defendants. | CASE NO.   '19CV1361 W   LL <br><br> **PLAINTIFFS' COMPLAINT** <br><br>   **1. Breach Of Contract- Failure to Defend** <br>   **2. Breach Of Contract- Failure to Indemnify** <br>   **3. Breach of Implied Covenant of Good Faith and Fair Dealing – Failure to Defend** <br>   **4. Breach of Implied Covenant of Good Faith and Fair Dealing – Failure to Indemnify** <br>   **5. Declaratory Relief** <br><br> **DEMAND FOR JURY TRIAL** |

25
26
27
28

  Plaintiffs KINGSLEY MANAGEMENT CORP., a Utah corporation; KMC CA

MANAGEMENT, LLC; a Utah limited liability company, and VILLA CAJON MHC,

L.P.; a Utah limited partnership (collectively, "Plaintiffs") allege causes of action

against Defendant OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, DBA NORTH CAROLINA OCCIDENTAL FIRE & CASUALTY COMPANY, a North Carolina corporation ("Defendant") as follows:

## THE PARTIES

### Plaintiffs

1. At all relevant times mentioned herein, Plaintiff KINGSLEY MANAGEMENT CORP. (hereinafter referred to as "KINGSLEY MANAGEMENT") is and was a Utah corporation existing under the laws of the State of Utah, with its principal place of business and headquarters in the State of Utah. Plaintiff KINGSLEY MANAGEMENT owns, operates, maintains, and/or manages Villa Cajon Mobile Home Estate, located at 255 E Bradley Ave., El Cajon, CA 92021 (hereinafter referred to as "Subject Insured Property").

2. At all relevant times mentioned herein, Plaintiff KMC CA MANAGEMENT, LLC (hereinafter referred to as "KMC CA MANAGEMENT") is and was a Utah limited liability company existing under the laws of the State of Utah, with its principal place of business and headquarters in the State of Utah. Plaintiff KMC CA MANAGEMENT owns, operates, maintains, and/or manages the Subject Insured Property.

3. At all relevant times mentioned herein, Plaintiff VILLA CAJON MHC, L.P. (hereinafter referred to as "VILLA CAJON") is and was a Utah limited partnership existing under the laws of the State of Utah, with its principal place of business and headquarters in the State of California. Plaintiff VILLA CAJON owns, operates, maintains, and/or manages the Subject Insured Property.

4. Plaintiffs KINGSLEY MANAGEMENT, KMC MANAGEMENT, and VILLA CAJON are hereinafter referred collectively as "PLAINTIFFS".

5. PLAINTIFFS' regular business activities are limited to the ownership, maintenance, and/or management of mobile home parks. PLAINTIFFS' regular business operations do not involve any "traditional environmental pollution event" as

1

contemplated by the California Supreme Court decision *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 73 P.3d 1205 (2003).  Specifically, PLAINTIFFS have not released, spilled, leaked, pumped, poured, emitted, emptied, discharged, injected, escaped, leached, dumped, disposed, discarded, removed, transported, shipped, managed, created, manufactured, treated, stored, disposed or processed any hazardous substance, chlorinated substance, chemical solvent, pollutant, toxin, or contaminant.

**Defendants**

6.     PLAINTIFFS are informed and believe and thereon allege that Defendant OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, DBA NORTH CAROLINE OCCIDENTAL FIRE & CASUALTY COMPANY is and was a North Carolina corporation existing under the laws of the State of North Carolina, with its principal place of business and headquarters in the State of North Carolina. OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, DBA NORTH CAROLINE OCCIDENTAL FIRE & CASUALTY COMPANY (hereinafter referred to as "Defendant") is and was at all relevant times either admitted to do business as an insurer under the laws of the State of California, or authorized to sell insurance in the State of California through a licensed surplus lines broker.

## JURISDICTION

7.     This Court has personal jurisdiction over the Defendant as it was at all relevant times hereinafter mentioned engaged in the business of selling and/or placing insurance in the State of California and within this District, including the issuance of the subject insurance policy to cover liability exposures in San Diego County, California.

8.     Jurisdiction in this matter is based upon diversity between the parties pursuant to 28 U.S.C. Section 1332 as there is diversity of citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.     This is an action for declaratory judgment pursuant to the Federal Declaratory Relief Act, 28 U.S.C. Section 2201, for purposes of determining an actual controversy between the parties.

**PLAINTIFFS' COMPLAINT**

## THE INSURANCE POLICIES

10.     Defendant made, executed, and delivered one or more successive Commercial Lines Policies to PLAINTIFFS.

11.     Defendant made, executed, and delivered Policy No. MH13471 to Plaintiff KINGSLEY MANAGEMENT, effective December 31, 2014 until December 31, 2015. A true and correct copy of Policy No. MH13471 is attached hereto as **Exhibit "A"**.

12.     Defendant made, executed, and delivered Policy No. MH14035 to Plaintiff KINGSLEY MANAGEMENT, effective December 31, 2015 until December 31, 2016. A true and correct copy of Policy No. MH14035 is attached hereto as **Exhibit "B"**.

13.     Defendant made, executed, and delivered Policy No. MH14460 to Plaintiff KINGSLEY MANAGEMENT, effective December 31, 2016 until December 31, 2017. A true and correct copy of Policy No. MH14460 is attached hereto as **Exhibit "C"**.

14.     **Exhibit "A"**, **Exhibit "B"**, and **Exhibit "C"** are collectively referred herein as the "Policies".

15.     The Policies define Plaintiff KMC MANAGEMENT as a named insured. The Policies further define KMC CA MANAGEMENT and VILLA CAJON as named insureds in the 'Schedule of Named Insured'.

16.     Under Coverage A, the Policies provide liability coverage for allegations of 'property damage' arising from an 'occurrence' during the effective dates of the Policies.

17.     Under Coverage A, the Policies provide coverage for allegations of 'bodily injury' arising from an 'occurrence' during the effective dates of the Policies.

18.     Under Coverage B, the Policies provide coverage for 'personal injury' during an 'occurrence' which arises during the effective dates of the Policies.

**Coverage A**

19.     Under Coverage A, the Policies provide both a defense from date of tender and indemnity for 'property damage'.  Specifically, the policies obligate Defendant to provide a defense for any 'suit' seeking 'property damage' against PLAINTIFFS, which

3

is potentially covered under the Policy:

    **1.**    **Insuring Agreement**

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.

        . . .

        b.    This insurance applies to 'bodily injury' and 'property damage' only if:

            (1)    The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

            (2)    The 'bodily injury' or 'property damage' occurs during the policy period; and

            (3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part.  If such a listed insured or authorized 'employee' knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred, then any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period.

    20.    Coverage A contains a Pollution Exclusion:

This insurance does not apply to:

        f.    Pollution

            (1)    'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or

4

escape of 'pollutants':

(a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured . . .

(b)    At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i)    Any insured; or

(ii)    Any person or organization for whom you may be legally responsible; or

(d)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the 'pollutants' are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor . . .

(e)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, 'pollutants.'

21.    In addition, the Policies also contain a Total Pollution Exclusion Endorsement which modifies the pollution exclusion:

Exclusion f. under Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability is replaced by the following:

5

This insurance does not apply to:

f. Pollution

(a) "Bodily Injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

. . .

22.     Therefore, under Coverage A, the liability coverage is triggered and insurance will apply for a suit seeking property damages for physical damage to tangible property unless otherwise excluded under the Policy.

23.     Furthermore, under Coverage A, the Policies are triggered and insurance will apply for a suit seeking costs for sickness, disease, or bodily injury unless otherwise excluded under the Policy.

**Coverage B**

24.     Under Coverage B, the Policies provide indemnity for 'personal and advertising injury', and obligate Defendant to provide a defense for any 'suit' seeking damages for 'personal and advertising injury':

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages . . .

b.     This insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period.

25.     Coverage B contains a Pollution Exclusion:

A.     Exclusion m. under Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability I replaced by the following:

This insurance does not apply to:

6

**PLAINTIFFS' COMPLAINT**

a.   "Personal and advertising injury";

(10)      Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, growth, or escape of "pollutants" at any time.

B.   The definition of "pollutants" under Section V – Definitions is replaced by the following:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, mold, fungi, bacteria, and other similar microbial contaminants, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**Other Coverage**

26.   The Policies also provides a Supplementary Payments coverage, which, in part, provides that Defendant will pay, with respect to a claim that settles or any suit against an insured "all expenses we incur" and "all court costs taxed against the insured in the 'suit'".

**Policy Definitions**

27.   The Policies define 'occurrence' as follows:

'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

28.   The Policies define 'bodily injury' as follows:

'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

29.   The Policies define 'personal and advertising injury' as follows and inclusive of a claim for nuisance and/or trespass:

'Personal and advertising injury' means injury, including consequential 'bodily injury,' arising out of one or more of the following offenses:

. . .

c.   The wrongful eviction from, wrongful entry into, or invasion of the right of

7

private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

. . .

30.     The Policies define 'property damage' as follows:

a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

31.     The Policies define 'suit' as follows:

'Suit' means a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged.

32.     Therefore, the Policies are triggered and insurance will apply for a suit seeking 'Property Damage' under Coverage A for physical damage to tangible property. The Policies are triggered and insurance will apply for a suit seeking 'Personal Injury' under Coverage B, including nuisance and trespass.  Accordingly, any such claim or suit alleged against PLAINTIFFS will trigger Defendant's duty to defend and indemnify pursuant to the Policies.

## THE UNDERLYING MATTER

### Prop 65 Notice

33.     On or about October 6, 2016, the California Department of Toxic Substances ("DTSC") issued a Proposition 65 Notification ("Prop 65 Notice") to the San Diego County Public Health Officer indicating that several chemicals considered human carcinogens were detected in soil, gas, and groundwater at 790 Greenfield Drive, El Cajon, California ("Contaminated Property").

PLAINTIFFS' COMPLAINT

34.   The Prop 65 Notice further stated that Trichloroethylene ("TCE") was a chemical detected at 790 Greenfield Drive, El Cajon, California, County of San Diego. The Notice stated: "Vapors off-gassing from underlying contaminated groundwater can migrate through the soil and through cracks in the floor and accumulate in the air inside buildings."

35.   The Prop 65 Notice lists Ametek, Inc. as the Responsible Party under "RP Name." A true and correct copy of the Prop 65 Notice is attached hereto as **Exhibit "D"**. The Prop 65 Notice does not list or identify PLAINTIFFS, either as a Responsible Party, a potentially responsible party, or otherwise.  Further, PLAINTIFFS or their respective business activities are not referenced, identified, or mentioned in the Prop 65 Notice.

36.   At no time alleged herein has PLAINTIFFS been engaged in the handling, disposal, processing, possession, treatment, storage, production, manufacturing, transportation, or use of any chemical located at the Subject Property, nor did PLAINTIFFS at any time bring on to the Subject Property any Pollutant

**Procedural History Of The Underling Matter And Allegations**

37.   On or about March 24, 2017, Adam Cox filed a class action lawsuit on behalf of others similarly situated (hereinafter the "Putative Underlying Class") as against Ametek, Inc., Thomas Deeney, and Senior Operations, LLC in the action entitled *Adam Cox et al. v. Ametek, Inc. et al.*, Case No. 3:17-cv-00597-GPC-AGS, in the United States District Court for the Southern District of California (hereinafter the "Underlying Matter").  The Putative Underlying Class alleges causes of action for negligence, gross negligence, private nuisance, public nuisance, and trespass against Ametek, Inc., Thomas Deeney, and Senior Operations, LLC arising out of the contamination of groundwater and ground soil at or around the Contaminated Property.

38.   A true and correct copy of the complaint in the Underlying Matter is attached hereto as **Exhibit "E"**.

39.   On or about May 23, 2017, the Putative Underlying Class filed its First Amended Complaint in the Underlying Matter. A true and correct copy of the First

9

Amended Complaint in the Underlying Matter is attached hereto as **Exhibit "F"**.

40. The Putative Underlying Class brought the Underlying Matter on behalf of all past and current residents of the Subject Insured Property:

> Plaintiffs brings this lawsuit on behalf of themselves and all others who resided in or owned a mobile home at Greenfield, Starlight, and/or Villa Cajon, who are similarly situated under Rule 23. Subject to additional information obtained through further investigation and/or discovery, the proposed "Class" consists of the following:

> "All persons who have resided or do now reside, and/or all persons who have owned or do now own a mobile home, situated above the contaminated groundwater plume, at Greenfield, Villa Cajon, and/or Starlight mobile home parks." (see Exhibit F, First Amended Complaint, at ¶ 155.)

41. Therein, the Putative Underlying Class alleged Ametek, Inc. used the Contaminated Property as a storage site for chlorinated solvents and other toxic waste created in the manufacture of aircraft engines from 1968 to 1988. The Putative Underlying Class further alleged Ametek, Inc. was aware in 1987 or 1988 that chlorinated solvents and other chemical waste leached and leaked into the groundwater and subsurface soil, creating a groundwater plume (hereinafter the "Plume"). The Putative Underlying Class alleged Ametek, Inc. knew the Plume migrated from its property and into the downgradient groundwater beyond the western property boundary of the Contaminated Property. (see Exhibit F, First Amended Complaint, at ¶¶ 28-36, 39.)

42. The Putative Underlying Class alleged Trichloroethylene, Dichloroethene, Dioxane, and Trichloroacetic acid existed in the trailer park and homes. (see Exhibit F, First Amended Complaint, at ¶ 48.)

43. The Putative Underlying Class further alleged Perchloroethylene, 1,1-Dichloroethane, benzene, toluene, ethylbenzene, and xylene entered into the mobile homes. (see Exhibit F, First Amended Complaint, at ¶ 49.)

**PLAINTIFFS' COMPLAINT**

44.   The Putative Underlying Class alleged they suffered bodily harm due to toxic exposure to the Plume.  The Putative Underlying Class alleged it is at increased risk of developing cancer, and/or liver, kidney, respiratory, neurological, developmental, and other diseases and illnesses as a result of continuous, prolonged exposure to the Plume and its toxic contaminants. (see Exhibit F, First Amended Complaint, at ¶¶ 105-108, 61, 93, 128, 153.)

45.   The Putative Underlying Class alleged they suffered further economic loss due to vapor intrusion into their respective mobile homes.  The Putative Underlying Class further alleged the Plume interfered with their use and enjoyment of their individual mobile homes.   The Putative Underlying Class also alleged the Plume obstructed their free use of their respective mobile homes so as to interfere with the comfortable enjoyment of life. (see Exhibit F, First Amended Complaint, at ¶¶ 56, 80-83, 112, 117, 128, 138, 144, 147, 150.)

46.   The Putative Underlying Class alleged the Plume was one of the largest in California's history, potentially extending 1.3 miles westward and down-gradient from the Contaminated Property. (see Exhibit F, First Amended Complaint, at ¶¶ 47-48.)

47.   The Putative Underlying Class alleged the properties of three mobile home parks were affected by the Plume: Starlight Mobile Home Park, Greenfield Mobile Home Park, and the Subject Insured Property. (see Exhibit F, First Amended Complaint, at ¶¶ 94-102.)

48.   Further, the Putative Underlying Class sought damages for medical monitoring costs due to toxic exposure. (see Exhibit F, First Amended Complaint, at ¶¶ 104-109.)

49.   The Putative Underlying Class alleged medical monitoring costs were necessary because of the increased risk of developing diseases due to exposure to the Plume on the Subject Insured Property:

Due to the indoor air intrusion of these toxic chemicals, there is a significantly increased risk to the class members, both current and former residents and/or

owners of the mobile home units within the subject MHPs, of developing the above mentioned diseases as a result of the exposure when compared to their chances of developing those diseases had they not been exposed and when compared to the chances that members of the public at large will develop the diseases. (see Exhibit F, First Amended Complaint, at ¶ 107.)

50.     PLAINTIFFS were not defendants in the Underlying Matter; nor does the operative complaint in the Underlying Matter refer, list, discuss, or mention PLAINITIFFS.

51.     PLAINTIFFS were not defendants in the First Amended Complaint filed in the Underlying Matter, nor does the First Amended Complaint in the Underlying Matter identify, refer, list, discuss, or mention PLAINITIFFS.  The Putative Underlying Class has not alleged PLAINTIFFS brought any pollutants on to the Subject Property or released, spilled, leaked, pumped, poured, emitted, emptied, discharged, injected, escaped, leached, dumped, disposed, discarded, removed, transported, shipped, managed, created, manufactured, treated, stored, disposed or processed any hazardous substance, chlorinated substance, chemical solvent, pollutant, toxin, or contaminant, nor did the Plaintiff Putative Class allege or imply that PLAINITFFS contributed to the creation or existence of the condition.

52.     The Putative Underlying Class did not allege PLAINTIFFS were in any way responsible for the presence of contaminated solvents or the Plume at the Subject Insured Property or the Contaminated Property.

53.     On or about June 20, 2017, defendant Senior Operations, LLC filed a third-party complaint in the Underlying Matter for indemnity, equitable contribution, and declaratory relief as against PLAINTIFFS, VILLA CAJON, KMC CA MANAGEMENT, and KINGSLEY MANAGEMENT, and the alleged owners of two other mobile home parks whose properties and residents were affected by the chemicals: Greenlight Mobile Home Park and Starlight Mobile Home Park.  A true and correct copy of Senior Operations, LLC's third-party complaint in the Underlying Matter is attached

hereto as **Exhibit "G"**.

54.     PLAINTIFFS were first added as a party to the Underlying Matter by defendant and third-party plaintiff Senior Operations, LLC's third-party complaint. Therein, Senior Operations, LLC alleged PLAINTIFFS purchased the Subject Insured Property in late 2009 or early 2010, and presently own and operate the Subject Insured Property.  Senior Operations, LLC also alleged PLAINTIFFS "was or should have been aware of information, assessments or appraisals of the [Subject Insured Property] which included and disclosed information with respect to environmental conditions impacting [Subject Insured Property], including regarding the subject plume that now forms the basis of Plaintiffs' lawsuit." (see Exhibit G, Senior Operations, LLC's Third-Party Complaint, at ¶ 37.)

55.     Third Party Plaintiff Senior Operations, LLC alleged and sought indemnity, comparative contribution, and declaratory relief from PLAINTIFFS for all property damage, bodily injury, and personal injury damages asserted by the Putative Underlying Class. (see Exhibit G, Senior Operations, LLC's Third-Party Complaint, at Prayer for Relief, p. 16.)  The Third-Party Complaint in essence alleges PLAINTIFFS should have disclosed to the residents of the Trailer Park the existence of the chemicals.

56.     However, Senior Operations, LLC did not allege in its Third-Party Complaint that PLAINTIFFS brought on to the Subject Property released, spilled, leaked, pumped, poured, emitted, emptied, discharged, injected, escaped, leached, dumped, disposed, discarded, removed, transported, shipped, managed, created, manufactured, treated, stored, disposed or processed any hazardous substance, chlorinated substance, chemical solvent, pollutant, toxin, contaminant, or the Plume, or otherwise used, possessed, or released chemicals as a by-product of PLAINTIFFS' operations, or in any way is responsible for the existence of the chemicals on the Subject Property.

57.     On or about June 27, 2017, defendants and third-party plaintiffs Ametek, Inc. and Thomas Deeney filed a third-party complaint in the Underlying Matter for

equitable indemnity, comparative indemnity, and declaratory relief as against VILLA CAJON, KMC CA MANAGEMENT, and KINGSLEY MANAGEMENT.  A true and correct copy of Ametek, Inc. and Thomas Deeney's third-party complaint in the Underlying Matter is attached hereto as **Exhibit "H"**.

58.   Ametek, Inc. and Thomas Deeney alleged PLAINTIFFS are liable in the Underlying Matter because they "was or should have been aware of information, assessments or appraisals of the [Subject Insured Property] which included and disclosed information with respect to environmental conditions impacting [Subject Insured Property], including regarding the subject plume that now forms the basis of Plaintiffs' lawsuit."  (see Exhibit H, Ametek, Inc. and Thomas Deeney's Cross-Complaint/Third-Party Complaint, at ¶ 38.)

59.   Third Party Plaintiffs Ametek, Inc. and Thomas Deeney alleged and sought indemnity, comparative contribution, and declaratory relief from PLAINTIFFS for all property damage, bodily injury, and personal injury damages asserted by the Putative Underlying Class. (see Exhibit H, Ametek, Inc. and Thomas Deeney's Cross-Complaint/Third-Party Complaint, at Prayer for Relief, p. 16-17.)

60.   However, Ametek, Inc. and Thomas Deeney did not allege in their third-party complaint that PLAINTIFFS brought on to the Subject Property released, spilled, leaked, pumped, poured, emitted, emptied, discharged, injected, escaped, leached, dumped, disposed, discarded, removed, transported, shipped, managed, created, manufactured, treated, stored, disposed or processed any hazardous substance, chlorinated substance, chemical solvent, pollutant, waste, toxin, contaminant, or the Plume, or otherwise used, possessed, released chemicals as a by-product of PLAINTIFFS' operations or in any way is responsible for the existence of the chemicals on the Subject Property.

**No Allegations Exist Which Trigger The Pollution Exclusion**

61.   In addition, no party in the Underlying Matter alleged PLAINTIFFS, or any third party acting on their behalf, were performing operations on the Subject Insured

Property, or any other property, or in any way created or caused any discharge or release of any chemical nor performed any test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of any hazardous substance, chlorinated substance, chemical solvent, pollutant, waste, contaminant, toxin, or the Plume.

62.     Further, no party in the Underlying Matter alleged PLAINTIFFS, or any third party acting on their behalf, handled, stored, disposed, processed, or treated any hazardous substance, chlorinated substance, chemical solvent, pollutant, waste, contaminant, or the Plume on the Subject Insured Property, or any other property.

63.     No Party in the Underling Matter alleged PLAINTIFFS, or any third party acting on their behalf, released, spilled, leaked, pumped, poured, emitted, emptied, discharged, injected, escaped, leached, dumped, disposed, discarded, removed, transported, shipped, managed, created, manufactured, treated, stored, disposed or processed any hazardous substance, chlorinated substance, chemical solvent, pollutant, waste, contaminant, toxin, or the Plume.

64.     No Party in the Underling Matter alleged PLAINTIFFS, or any third party acting on their behalf, performed any operation in which any hazardous substance, chlorinated substance, chemical solvent, pollutant, waste, contaminant, toxin, or the Plume were brought upon or into the Contaminated Property.

65.     No Party in the Underling Matter alleged PLAINTIFFS, or any third party acting on their behalf, performed operations in which any hazardous substance, chlorinated substance, chemical solvent, pollutant, waste, contaminant, toxin, or the Plume was taken off or transported away from the Contaminated Property.

66.     No Party in the Underling Matter alleged PLAINTIFFS, or any third party acting on their behalf, performed operations in which any hazardous substance, chlorinated substance, chemical solvent, pollutant, waste, contaminant, toxin, or the Plume were brought to the Subject Insured Property.

67.     No Party in the Underling Matter alleged PLAINTIFFS, or any third party

**PLAINTIFFS' COMPLAINT**

acting on their behalf, performed operations in which any hazardous substance, chlorinated substance, chemical solvent, pollutant, waste, contaminant, toxin, or the Plume was taken off or transported away from the Subject Insured Property.

68.    Furthermore, No Party in the Underlying Matter alleged PLAINTIFFS acted in concert with any other party to cause the hazardous substance, chlorinated substance, chemical solvent, pollutant, waste, contaminant, toxin, or the Plume.

69.    DTSC does not allege PLAINTIFFS caused or contributed to the Plume or any environmental contaminant or pollutant at issue in the Underlying Matter. The Prop 65 Notice furthermore does not describe PLAINTIFFS as a responsible party for the Plume and contaminants at issue in the Underlying Matter. Finally, no party alleged or asserted, that PLAINTIFFS caused or created an environmental pollution event

## PLAINTIFFS' REQUESTS FOR COVERAGE

70.    Commencing from the date of tender of the defense of the Underlying Matter, Defendant was required to, but refused to provide a defense of the Underlying Matter pursuant to the terms and conditions of the policies at issue as set forth under California law. Notwithstanding the legal obligation to participate in the defense of the Underlying Matter, Defendant failed to fund any portion of the defense of the Underlying Matter as required under the terms of each policy at issue as construed under California law. Defendant denied coverage without reasonable basis.

71.    On or about June 20, 2017, PLAINTIFFS notified Defendant of the Underlying Matter and requested a defense and indemnity pursuant to the Policies arising from the Underlying Matter.

72.    On or about June 20, 2017, Innovative Risk Management, the third party claims administrator on behalf of Defendant, requested a copy of the complaint in the Underlying Matter.

73.    On or about July 14, 2017, Defendant requested information relating to the date Plaintiffs VILLA CAJON and KINGSLEY MANAGEMENT were served with the complaint in the Underlying Matter. A true and correct copy of Defendant's July 14,

**PLAINTIFFS' COMPLAINT**

2017 e-mail is attached herein as **Exhibit "I"**.

74.   On or about July 14, 2017, PLAINTIFFS sent an e-mail to Defendant and requested Defendant coordinate with PLAINTIFFS to defend the underlying pleadings in the Underlying Matter on behalf of all three PLAINTIFFS. A true and correct copy of PLAINTIFF'S July 14, 2017 e-mail is attached herein as **Exhibit "J"**.

75.   On or about July 14, 2017, Defendant sent a reply e-mail and asked PLAINITFFS:

> Have you hired a corp [sic] attorney to protect the answer date or has it just been reported to us?

76.   A true and correct copy of Defendant's July 14, 2017 e-mail is attached herein as **Exhibit "K"**.

77.   On or about August 2, 2017, Innovative Risk Management issued an acknowledgement letter of the claims asserted against PLAINTIFFS in the Underlying Matter on behalf of Defendant.  On such date, Defendant denied coverage and refused to defend PLAINTIFFS in the Underlying Matter.  The sole basis for Defendant's denial of coverage in the Underlying Matter is the Pollution Exclusion.

78.   A true and correct copy of Defendant's August 2, 2017 denial letter is attached herein as **Exhibit "L"**.

79.   On or about July 30, 2018, counsel for PLAINTIFFS responded to Defendant's denial letter and provided additional information and analysis as to why the Pollution Exclusion was inapplicable to coverage for the PLAINTIFFS in the Underlying Matter.  Specifically, PLAINTIFFS explained no party in the Underlying Matter alleged PLAINTIFFS were a polluter or participated in the release of a polluting matter; nor was PLAINTIFFS in any way involved in the creation or cause of the discharge of any pollutant.  Further, PLAINTIFFS explained the sole basis of potential liability was for PLAINIFFS' alleged failure to warn or disclose the condition or the existence of the lawsuit, thus falling outside of the scope of the pollution exclusion.  In fact, the insureds were not involved in any "traditional environmental pollution event"

**PLAINTIFFS' COMPLAINT**

required by the seminal decision in *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 73 P.3d 1205 (2003), precluding the application of the exclusion:

> Operating a mobile park is not consistent with a traditional environmental polluting activity nor were the insureds adequately apprised under the terms and conditions of the policy that the pollution exclusion as written in the subject policy signified no coverage to such an operator of the mobile home park in the absence of the operator discharging or releasing pollutants into the environment reflecting a traditional environmental event.

80.    A true and correct copy of PLAINTIFFS' July 30, 2018 letter is attached herein as **Exhibit "M"**.

81.    As of the date of filing this Complaint, Defendant has yet to respond to PLAINTIFFS' July 30, 2018 letter providing additional information for coverage in the Underlying Matter.

82.    Defendant has been in possession of PLAINTIFFS' July 30, 2018 letter. Despite being made aware of the additional extrinsic evidence providing the pollution exclusion does not apply, and at a minimum, there was the possibility of coverage triggering the duty to defend, Defendant has continued to refuse to defend PLAINTIFFS in breach of its express obligations and ignored the extrinsic evidence provided when continuing to refuse to defend.

83.    Moreover, Defendant was aware of PLAINTIFFS' business operations and activities which at no material time involved as a by-product of such operations the release of chemicals or the creation of a pollution condition or traditional environmental event.

84.    Commencing from the date of tender of the defense of the Underlying Matter, Defendant, based on the terms and conditions of the Policy, Defendants were required to, but failed, to participate in the defense of the Underlying Matter. Notwithstanding the legal obligation to participate in the defense of the Underlying Matter, Defendant refused to fund the defense of the Underlying Matter as required

under the terms of each policy at issue.

## DEFENDANT FAILED TO DEFEND THE INSURED PLAINTIFFS IN THE UNDERLYING MATTER

85.    Defendant's denial and refusal to defend the Underlying Action was designed to force PLAINTIFFS to forego benefits under the respective policies of insurance herein identified that they are entitled to receive for the events complained of in the Underlying Matter.

86.    As a direct and proximate result of Defendant's delay and failure to participate, PLAINTIFFS have been forced to pay substantial attorneys' fees and costs to fund the defense of the Underlying Matter in an amount and in a sum according to proof.  Said sum has not been paid or reimbursed from any carrier and has been incurred and continues to accrue until the Underlying Matter is concluded.

87.    PLAINTIFFS have been actively defending and funding its own defense and participating in settling the Underlying Matter.  However, Defendant's failure to acknowledge a defense and indemnity of its insureds, pursuant to the policies identified herein, has caused PLAINTIFFS to sustain economic harm in having to fund its defense fees and having to fund the settlement reached for all obligations owed by Plaintiffs in the Underling Matter.

## THE SETTLEMENT

88.    PLAINTIFFS have entered into a tentative settlement and release of all claims from the Underlying Matter ("Settlement of the Underlying Matter"), and shall submit to the Court approval of such settlement.

89.    PLAINTIFFS' settlement is currently subject to negotiations between Ametek and the class action.

90.    Pursuant to the Settlement of the Underlying Matter and Defendant's failure to provide a defense or indemnity to PLAINTIFFS in the Underlying Matter, PLAINTIFFS have incurred substantial attorneys' fees and costs and will be required to fund the settlement reached in the Underlying Matter.

**PLAINTIFFS' COMPLAINT**

## **DEFENDANT WAS REQUIRED TO PROVIDE A DEFENSE PURSUANT TO THE POLICIES AND PLAINTIFFS HAVE BEEN DAMAGED BY DEFENDANT'S FAILURE TO PROVIDE SUCH A DEFENSE**

91.    The Policies were triggered by the allegations in the Underlying Action upon receipt of tender.

92.    As described above, Cross-Complainants/Third-Party plaintiffs, Ametek, Inc., Senior Operations, LLC, and Thomas Deeney alleged PLAINTIFFS contributed to 'Property Damage', 'Bodily Injury', and/or 'Personal Injury' suffered by the Putative Underlying Class in the Underlying Matter.

93.    The Policies specifically provided coverage for 'Property Damage' inclusive of loss of use of tangible property, and for 'Bodily Injury', inclusive of costs related to the contraction and prevention of disease.  The Policies further provided coverage for 'Personal Injury' inclusive of 'wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.'

94.    Furthermore, the Putative Underlying Class' claim for medical monitoring costs triggered coverage under the Policies for 'Bodily Injury'.

95.    Therefore, the Policies were triggered by the underlying third-party plaintiff's allegations in their respective third-party complaints.

96.    The Settlement of the Underlying Matter is the consequence of Defendant's failure to defend.  Defendant's failure to defend and or wrongful refusal to defend, has caused PLAINTIFFS to have paid out of pocket defense fees and costs commencing from service of the Senior Operations, LLC's third-party complaint until the conclusion of the Underlying Matter.  All of the out of pocket defense fees and costs paid by PLAINTIFFS should have been paid by Defendant.  Further, Defendant is responsible for the amount of the Settlement of the Underlying Matter to be paid by PLAINTIFFS as a consequence of Defendant's failure to defend in an amount to be proven at trial.

97.    Altogether PLAINTIFFS total damages arising from defense and tentative

settlement of the Underlying Matter caused by Defendant's collective failure to defend PLAINTIFFS has caused PLAINTIFFS to have suffered actual damages due to Defendant's failure to defend and pursuant to the policies identified herein in an amount to be proven at trial, but in excess of $75,000. Specifically, the settlement amount and defense costs incurred as a result of Defendant's failure to defend PLAINTIFFS will exceed $75,000. Finally, as a proximate cause of Defendant's failure to defend, PLAINTIFFS will be forced or have entered into a Settlement Agreement with the Putative Underlying Class as set forth herein, will cause PLAINTIFFS to fund the settlement in an amount to be proven at trial.

## PLAINTIFFS' FINAL DEMAND TO DEFENDAND TO COMPLY WITH THEIR POLICIES

98.     Commencing from the date of tender, Defendant should have agreed, but refused to defend PLAINTIFFS in the Underlying Matter pursuant to the terms and conditions of the policies at issue. Notwithstanding the legal obligation to participate in the defense of the Underlying Matter, Defendant failed to fund the defense of the Underlying Matter as required under the terms of each policy at issue. Accordingly, Defendant is in breach of its respective policies, identified herein, because they failed to pay for all necessary and reasonable defense fees and costs they were contractually obligated to pay for under the subject policies. At all material times, the subject policies were triggered because the facts alleged in the Underlying Matter supported at a minimum the possibility of insurance and thus, the duty to defend.

99.     Since the time PLAINTIFFS first tendered the Underlying Matter to Defendant, Defendant has engaged in a course of dealing with PLAINTIFFS with the intent to cause frustration in the payment of defense fees and costs incurred by PLAINTIFFS in connection with the Underlying Matter as a direct result of Defendant's failure to defend and fund any portion of the defense of the Underlying Matter as required under the terms of the policies of insurance identified herein.

100.     Defendant's denial of coverage of the Underlying Matter was designed to

21

1  force PLAINTIFFS to forego benefits under the respective policies of insurance herein
2  identified that PLAINTIFFS are entitled to receive for the events complained of in the
3  Underlying Matter.

4      101.  As a direct and proximate result of Defendant's refusal to defend,
5  PLAINTIFFS have been forced to pay substantial defense fees and costs to fund the
6  Underlying Matter in an amount and in a sum according to proof.

7      102.  However, as of the date of this filing, Defendant did not respond to nor
8  agree to provide coverage to PLAINTIFFS for the Underlying Matter.

9                        **FIRST CAUSE OF ACTION**
10             **For Breach of Contract – Failure to Defend**
11                **(By PLAINTIFFS and against Defendant)**

12     103.  As a First Cause of Action against Defendant, PLAINTIFFS reallege and
13  incorporate by this reference, as though fully set forth herein, paragraphs 1 through 100
14  of this complaint.

15     104.  As set forth above, Defendant, pursuant to the applicable insurance
16  policies' terms and conditions, agreed to investigate, adjust, immediately defend, and
17  settle claims asserted against PLAINTIFFS on account of property damage, bodily
18  injury, or personal injury sought within a suit, falling within or potentially falling within
19  the coverage of, or as defined in, the policies identified herein.  Pursuant to the insurance
20  policies, Defendant also had a duty to conduct a reasonable, adequate, and diligent
21  investigation of any claims made against PLAINTIFFS and affecting the Defendant's
22  duty to defend.

23     105.  The insurance policies issued by Defendant to PLAINTIFFS did in fact, at
24  a minimum, potentially cover one or more of the allegations raised in the Underlying
25  Matter and required Defendant to fully defend and indemnify PLAINTIFFS in the
26  Underlying Matter.

27     106.  PLAINTIFFS performed all conditions, covenants, and promises required
28  to be performed in accordance with the terms and conditions of the written contracts of

insurance, except to the extent, if any, that the PLAINTIFFS were prevented from performing by Defendant, or excused from such performance, or said conditions, covenants, and promises have been waived.

107.   PLAINTIFFS duly tendered the defense of each of the claims made against them in the Underlying Action to Defendant.   Defendant refused to fully defend PLAINTIFFS in the Underlying Matter as required by the insurance policies by refusing to timely, promptly, and completely provide a defense fund all post tender fees and costs.

108.   Under California law the PLAINTIFFS were entitled to a defense in the Underlying Matter with respect to the duties owed to the PLAINTIFFS under the insurance policies issued by Defendant.   To date, in breach of the express terms of the insurance contracts, Defendant has not provided a complete defense.

109.   By reason of Defendant's refusal to immediately, completely, and fully defend PLAINTIFFS pursuant to the express obligation to do so in the subject policies, Defendant breached its written contracts of insurance under which the PLAINTIFFS were entitled to coverage as insureds.

110.   As a direct and proximate result of Defendant's breaches of its contractual duties, PLAINTIFFS incurred substantial attorneys' fees and costs, experts' fees and costs, and other expenses in defense and investigation in an amount within the jurisdictional limits of this Court, according to proof.   Further, as a direct and proximate result of Defendant's breach of their contractual duties, PLAINTIFFS are subject to liability from the Underlying Matter's claims in an amount within the jurisdictional limits of this Court, according to proof.

111.   The failure to defend notwithstanding the possibility of coverage established, at a minimum, in the Underlying Matter, caused the PLAINTIFFS to settle in the Underlying Action in order to forego protracted litigation.

112.   Defendant's defense obligations are both immediate and extend to the entirety of the Underlying Matter.   See *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287; *Buss v. Superior Court* (1997) 16 Cal.4th 35.

23

113.   Based on Defendant's refusal to fully and completely defend, Defendant has breached the terms and conditions of the insurance policies identified herein.

## SECOND CAUSE OF ACTION

### For Breach of Contract – Failure to Indemnify

### (By PLAINTIFFS and against Defendant)

114.   PLAINTIFFS repeat, re-allege and incorporate by this reference each and all of the allegations contained in this Complaint.

115.   As set forth above, Defendant, pursuant to the applicable insurance policies' terms and conditions, agreed to investigate, adjust, immediately defend, and settle claims asserted against PLAINTIFFS on account of property damage sought within a suit, falling within or potentially falling within the coverage of, or as defined in, the insurance policies identified herein.  Pursuant to the insurance policies, Defendant also had a duty to conduct a reasonable, adequate, and diligent investigation of any claims made against PLAINTIFFS and affecting Defendant's duty to defend and indemnify.

116.   The insurance policies identified herein issued by Defendant did in fact, at a minimum, potentially cover one or more of the allegations raised in the Underlying Matter and required Defendants to fully defend and indemnify PLAINTIFFS in the Underlying Matter.

117.   The PLAINTIFFS performed all conditions, covenants, and promises required to be performed in accordance with the terms and conditions of the written contracts of insurance, except to the extent, if any, that the PLAINTIFFS were prevented from performing by Defendant, or excused from such performance, or said conditions, covenants, and promises have been waived.

118.   PLAINTIFFS duly tendered the defense of each of the claims made against them in the Underlying Matter to Defendant.  Thereafter, Defendant failed and refused to pay for PLAINTIFFS' defense costs, attorneys' fees, and reasonable and necessary costs in furtherance of the defense of the Underlying Matter.

119.   Under California law, in the Underlying Matter the PLAINTIFFS were entitled to both a defense and indemnity from Defendant with respect to the duties owed to PLAINTIFFS under the policies identified herein issued by Defendant.

120.   As a direct and proximate result of Defendant's breaches of its contractual duties, PLAINTIFFS incurred substantial attorneys' fees and costs, experts' fees and costs, and other expenses in defense agreed to settle the cross-complaint but which settlement is being delayed based on ongoing negotiations by the remaining parties to the Underlying Matter and in an amount within the jurisdictional limits of this Court, according to proof.   PLAINTIFFS will amend this Complaint once its tentative settlement with the cross-complainants becomes final.

121.   As a direct and proximate result of Defendant's breaches of its contractual duties and in mitigation of the PLAINTIFFS' own damages, PLAINTIFFS have entered into a tentative settlement.

### THIRD CAUSE OF ACTION

**For Breach of Implied Covenant of Good Faith and**

**Fair Dealing – Failure to Defend**

**(By PLAINTIFFS against Defendant)**

122.   PLAINTIFFS repeat, re-allege and incorporate by this reference each and every of the allegations contained in this Complaint as though set forth herein.

123.   At all material times, Defendant had the duty to act fairly and in good faith to PLAINTIFFS as an insured in carrying out their responsibilities under the respective policies of insurance described herein.

124.   Inherent in each of the insurance policies issued by Defendant to PLAINTIFFS as an insured was an implied covenant of good faith and fair dealing, which imposed upon Defendant the duty to deal fairly and honestly with PLAINTIFFS in good faith and to do nothing to the detriment of PLAINTIFFS, or impair, interfere with, hinder, potentially deprive PLAINTIFFS of their rights and benefits under said insurance policies, including defense of claims asserted against PLAINTIFFS on

account of property damage caused by an occurrence, falling within or potentially falling within the coverage of, or as defined in the subject Policy referenced herein, including the Underlying Matter.

125.   Defendants had a further duty to honor the contractual obligations of defense contained in applicable insurance policies with respect to which PLAINTIFFS were an insured.

126.   Pursuant to the subject Policy, Defendant had an implicit obligation to act fairly and in good faith to PLAINTIFFS to promptly and reasonably investigate claims against PLAINTIFFS, and to make reasonable coverage decisions.  The Policy identified herein is subject to an implied covenant of good faith and fair dealing such that no party will disturb the rights of the other to obtain the full benefits of the contract, Defendant has breached the implied covenant of good faith and fair dealing when refusing to defend the Underlying Matter, and/or to provide necessary coverage(s) owed under the Policy when tendered, and at all material times thereafter, notwithstanding repeated requests to do so.

127. PLAINTIFFS are informed, believe and thereupon allege Defendant breached its obligation to act fairly and in good faith towards PLAINTIFFS by committing, among other things, the following acts and omissions:

    a. Unreasonably refusing to immediately defend Plaintiffs in the Underlying Matter after receipt of tender thereof and repeated communications from PLAINTIFFS to Defendant thereafter.

    b. Refusing to conduct a reasonable investigation and unreasonably and knowingly withholding monetary payment of the defense;

    c. Causing the insured severe financial hardship, including, but not limited to, attorneys' fees and costs, by refusing to defend PLAINTIFFS;

    d. Refusing to acknowledge the obligation to defend PLAINTIFFS in the Underlying Matter and refusing to mount and fund a defense on behalf of PLAINTIFFS by wrongfully and purposefully misconstruing the

Subject Policy language relied upon by the carriers and ignoring the clear language in the Policy triggering a duty to defend;

e. Adopting unreasonable and unwarranted interpretations and applications of provisions and exclusions in the Policy, refusing to reasonably apply provisions of the policies to the claims and unreasonably refusing to acknowledge that the claims asserted against PLAINTIFFS in the Underlying Matter were and are potentially covered, all to the detriment of PLAINTIFFS' interest in the Underlying Matter;

f. Unreasonably, purposefully and intentionally interpreting the allegations and claims against PLAINTIFFS in the Underlying Matter inaccurately, solely in an attempt to avoid coverage obligations owed to PLAINTIFFS;

g. Refusing to provide coverage based on the fact PLAINTIFFS were not involved in any environmental event and was not even alleged to be a polluter. Further, any pollution of the trailer park was not the by-product of PLAINTIFFS' operations;

h. Defendant ignored the Policy language which specifically provided that the pollution exclusion was predicated on a widespread dissemination of pollutants and a traditional environmental event as construed under California law.

i. Refusing to provide coverage after accepting premiums from PLAINTIFFS in exchange for the agreement to provide liability coverage, bodily injury or property damage;

j. Reliance on exclusionary language which had no reasonable application in context to PLAINTIFFS' operations;

k. Refusing to timely, promptly, and without delay, pay for the reasonable and necessary defense incurred after the tender;

**PLAINTIFFS' COMPLAINT**

l.  Refusing to provide PLAINTIFFS with any reasonable or justifiable basis for the decision to deny or delay the actual participation of the defense of the Underlying Matter;

m. Interpreting the provisions of the policies and the factual circumstances as to resolve ambiguities and uncertainties against PLAINTIFFS and in favor of Defendant's own economic interests;

n.  Misrepresenting the insurance Policy provisions;

o.  Embarking on a course of conduct and pattern and practice, whereby the Defendant refused to respond to tenders made by or on behalf of their insureds, refuse to acknowledge the defense obligation owed to their insureds, or refuse to participate in the mounting and funding of the defense with respect to the underlying claims;

p.  Continuing to pursue such course of conduct, pattern and practice after California case law established the immediacy of the defense obligation owed and where the duty to defend is based on the mere potentiality of coverage arising from the insured's operations.  Defendant has disobeyed clear legal precedent in a known manner in clear and conscious disregard to PLAINTIFFS' rights;

q.  Continuing to pursue such course of conduct and pattern and practice of not providing any reasonable basis to delay, reject, or deny the defense tendered and requested when provided extrinsic evidence as well as the refusal of Defendant to review the four corners of the complaint for triggering an immediate defense upon tender of a potentially covered claim, and the importance of an insurer's obligation to defend its insured immediately upon tender of defense; and

r.  Pursuing such a course of conduct and pattern and practice, notwithstanding the terms of the policy imposing a duty to immediately defend potentially covered claims asserted against the insured

28

**PLAINTIFFS' COMPLAINT**

notwithstanding repeated advisements of the California Supreme Court over the last thirty years of the breadth of the defense obligation, the immediacy of the defense obligation upon tender and the need to defend by funding of the defense, and notwithstanding repeated advisements of California Courts regarding the public policies supporting the obligation of an insurer to provide its insured an immediate defense in the context of construction defect claims.

128.   The above despicable conduct by Defendant has been and continues to be unreasonable, capricious, arbitrary, and constitutes a breach of the covenant of good faith and fair dealing.

129.   Such conduct enumerated above was malicious, unreasonable, oppressive, fraudulent, despicable, had improper motives, including a desire by Defendant to cause injury, vex, annoy, and oppress PLAINTIFFS, and were carried on by Defendant with a willful and conscious disregard of PLAINTIFFS' rights and economic safety.  Such despicable conduct by Defendant would be looked down upon and despised by ordinary, decent people.

130.   The respective officers, directors, and managing agents of Defendant participated in, authorized and ratified the wrongful conduct of said Defendant as alleged above.

131.   As a result of the bad faith conduct of Defendant in this matter, PLAINTIFFS have incurred substantial attorneys' fees, costs and expenses in defense, mitigation of damages by settling the Underlying Matter and other costs and expenses in response to the Underlying Matter and have been required to bring this Complaint to enforce its right against Defendant, all the aforementioned fees, costs and expenses which it has incurred as a result of the Underlying Matter together with interest thereof. PLAINTIFFS have suffered damages and will continue to suffer damages within the jurisdiction of this Court, according to proof.

132.   Plaintiff is further entitled to recover as damages against Defendant, all

fees, expenses and costs incurred in this action to enforce its rights under the respective insurance policies, plus interest thereon, according to proof.

133. The above described conduct of the Defendant has been and continues to be unreasonable, capricious and arbitrary, and constitutes breach of the covenant of good faith and fair dealing contained in each and all of the insurance policies referred to above in this Complaint.

134. The above described conduct further constitutes malicious, oppressive and despicable conduct and conscious disregard of PLAINTIFFS' rights and stems from improper and evil motives, including Defendant's desire to reduce or avoid their obligations to PLAINTIFFS, so as to justify an award of punitive and exemplary damages.

### **FOURTH CAUSE OF ACTION**

**For Breach of Implied Covenant of Good Faith and**

**Fair Dealing – Failure to Indemnify**

**(By PLAINTIFFS against Defendant)**

135. PLAINTIFFS repeat, re-allege and incorporate by this reference each and every of the allegations contained in this Complaint as though set forth herein.

136. At all material times, Defendant had the duty to act fairly and in good faith to PLAINTIFFS as an insured in carrying out their responsibilities under their respective policies of insurance.

137. Inherent in the insurance policies issued by Defendant to PLAINTIFFS as an insured, was an implied covenant of good faith and fair dealing, which imposed upon each Defendant the duty to deal fairly and honestly with PLAINTIFFS in good faith and to do nothing to the detriment of PLAINTIFFS, or to impair, interfere with, hinder, potentially deprive PLAINTIFFS of their rights and benefits under said insurance policies, including the indemnification of PLAINTIFFS as a result of settlements, awards or judgments that may have been or may be imposed as a result of the Underlying

Matter and have tentatively entered into by PLAINTIFFS based on the refusal of Defendants to defend.

138.   Defendant was under a further duty to honor the contractual obligations of indemnity contained in applicable insurance policies with respect to which the PLAINTIFFS were an insured.

139.   Pursuant to the insurance policies, Defendant has an implicit obligation to act fairly and in good faith to PLAINTIFFS to promptly and reasonably investigate claims against PLAINTIFFS and to make reasonable coverage decisions.  The Policies identified herein are subject to an implied covenant of good faith and fair dealing such that no party will disturb the rights of the other to obtain the full benefits of the contract. Defendant has breached the implied covenant of good faith and fair dealing when refusing to indemnify the Underlying Matter, and/or to provide necessary coverage owed under the Policy when tendered, and at all material times thereafter, notwithstanding repeated requests to do so.

140.   Defendant has disregarded PLAINTIFFS' rights under the insurance policies and unreasonably, wrongfully and in bad faith denied coverage, including refusing to indemnify PLAINTIFFS herein under the insurance policies as hereinabove alleged, and Defendant (through their respective officers, directors and managing agents) have breached the implied covenant of good faith and fair dealing contained in the insurance policies.  Said breach included, but is not limited to the following:

     a. Unreasonably refusing to timely and unequivocally confirm to PLAINTIFFS that Defendant would acknowledge the existence and the validity of coverage under the policies for each of the claims asserted against PLAINTIFFS in the Underlying Matter and fully indemnify PLAINTIFFS for such claims.

     b. Unreasonably refusing to timely agree to pay the indemnity obligations arising from the Underlying Matter where settlement obligations of Defendant required Defendant to pay such damages;

**PLAINTIFFS' COMPLAINT**

c. Inclusive in Defendant's respective obligation to act fairly and in good faith to PLAINTIFFS is the duty to properly and reasonably investigate claims against PLAINTIFFS and to make reasonable coverage decisions. Defendant breached its respective obligations to act fairly and in good faith toward PLAINTIFFS by delaying the investigation, evaluation and confirmation of the coverage obligation, by ignoring or refusing to respond to PLAINTIFFS' tender of the Underlying Matter and PLAINTIFFS' repeated advisements thereafter and/or by acknowledging the obligation to PLAINTIFFS under the Policies referenced herein, but refusing to comply with such obligations by refusing to participate in, fund, or otherwise contribute to settlement of the Underlying Action.

d. Unreasonably refusing to provide proper settlement authority owed to PLAINTIFFS under the policies, even though it was reasonably clear that the claims in the Underlying Matter were covered by the subject insurance policies, which has compelled PLAINTIFFS to engage legal counsel and to initiate this Complaint to recover such indemnity benefits owed and to compel the Defendant to honor their obligations under the insurance policies.

141. The above despicable conduct by Defendant has been and continues to be unreasonable, capricious, arbitrary, and constitutes a breach of the covenant of good faith and fair dealing.

142. Such conduct enumerated above was malicious, unreasonable, oppressive, fraudulent, and despicable, had improper motives, including a desire by Defendant to cause injury, vex, annoy, and oppress PLAINTIFFS, and were carried on by Defendant with a willful and conscious disregard of PLAINTIFFS' rights and economic safety. Such despicable conduct by Defendant would be looked down upon and despised by ordinary, decent people.

PLAINTIFFS' COMPLAINT

143.   The respective officers, directors, and managing agents of Defendant participated in, authorized and ratified the wrongful conduct of said Defendant as alleged above.

144.   As a result of the bad faith conduct of Defendant in this matter, PLAINTIFFS have incurred substantial attorneys' fees, costs and expenses in defense, mitigation of damages by settling the Underlying Matter and other costs and expenses in response to the Underlying Matter and have been required to bring this Complaint to enforce its right against Defendant, all the aforementioned fees, costs and expenses which it has incurred as a result of the Underlying Matter together with interest thereof. PLAINTIFFS have suffered damages and will continue to suffer damages within the jurisdiction of this Court, according to proof.

145.   Plaintiff is further entitled to recover as damages against Defendant, all fees, expenses and costs incurred in this action to enforce its rights under the respective insurance policies, plus interest thereon, according to proof.

146.   The above described conduct of the Defendant has been and continues to be unreasonable, capricious and arbitrary, and constitutes breach of the covenant of good faith and fair dealing contained in each and all of the insurance policies referred to above in this Complaint.

147.   The above described conduct further constitutes malicious, oppressive and despicable conduct and conscious disregard of PLAINTIFFS' rights and stems from improper and evil motives, including Defendant's desire to reduce or avoid their obligations to PLAINTIFFS, so as to justify an award of punitive and exemplary damages.

## **FIFTH CAUSE OF ACTION**

### **Declaratory Relief**

### **(By PLAINTIFFS against Defendant)**

148.   PLAINTIFFS repeat, re-allege and incorporate by this reference each and

**PLAINTIFFS' COMPLAINT**

1   every of the allegations contained in this Complaint as though set forth herein.

2       149.   As set forth above, Defendant was required to defend PLAINTIFFS as to

3   any claims made in the Underlying Matter of alleged property damage and/or bodily

4   injury caused by an occurrence falling within and/or potentially falling within the

5   coverage defined in each Policy.

6       150.   Defense fees and costs, including attorneys' fees and costs, and experts'

7   fees and costs, have been incurred by PLAINTIFFS because of property damage/bodily

8   injury caused by an occurrence falling within and/or potentially falling within the

9   coverage of each of the policies referred to hereinabove.

10      151.   PLAINTIFFS provided timely notice of the claims asserted against it in the

11  Underlying Matter to the Defendant, and PLAINTIFFS have performed all conditions,

12  covenants, and promises required to be performed in accordance with the terms and

13  conditions of each written contract of insurance, except to the extent that PLAINTIFFS

14  were prevented by Defendant or excused from such performance, or said conditions,

15  covenants and promises have accrued or have been waived based on each Defendant's

16  breach of its respective insurance agreement, including refusals to defend and indemnify

17  PLAINTIFFS among other matters.

18      152.   A dispute has arisen between PLAINTIFFS and Defendant in that

19  PLAINTIFFS contends that it was and is entitled to be defended in the Underlying

20  Matter by Defendant pursuant to these insurance policies and are entitled to be

21  reimbursed for the attorneys' fees and costs, experts' fees and costs, and other costs and

22  expenses in the defense, repayment, loss adjustment, mitigation, investigation and

23  settlement and other costs and expenses incurred as a result of the Underlying Matter.

24  PLAINTIFFS are informed, believe, and thereon allege that Defendant unreasonably

25  contends otherwise.

26      153.   PLAINTIFFS contend and Defendant disputes the existence of potential

27  coverage triggering the duty to defend as the circumstances surrounding the Underlying

28  Matter does not arise out of a traditional environmental event thus, at a minimum,

triggering the duty to defend.

154.   PLAINTIFFS contend and Defendants dispute that based on the refusal to defend, notwithstanding a duty to do so, PLAINTIFFS mitigated their liability requiring Defendants to reimburse PLAINTIFFS for any settlement caused by Defendants' failure to defend.

155.   An actual controversy exists between PLAINTIFFS and Defendant regarding the duties of Defendant to defend PLAINTIFFS pursuant to their respective insurance policies as to the claims asserted in the Underlying Matter against PLAINTIFFS, and to indemnify PLAINTIFFS for any damage and/or settlement monies which PLAINTIFFS may be required to pay in connection with the Underlying Action. A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under the insurance policies and for reforming those policies in accordance with the intent of the parties as reflected in the contracts.

## PRAYER

WHEREFORE, PLAINTIFFS pray for judgment against the Defendant as follows:

### ON THE FIRST AND SECOND CAUSES OF ACTION

1.   For compensatory damages plus interest thereon, according to proof, but in an amount within the jurisdiction of this court;

2.   For attorneys' fees and costs of suit;

### ON THE THIRD AND FOURTH CAUSES OF ACTION

3.   For compensatory damages plus interest thereon, according to proof, but in an amount within the jurisdiction of this court;

4.   For attorneys' fees and costs of suit in obtaining the benefits owed under each respective insurance policy, pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, according to proof;

5.   For punitive and exemplary damages according to proof.

**PLAINTIFFS' COMPLAINT**

## ON THE FIFTH CAUSE OF ACTION

6.    For a declaratory judgment that Defendant who issued the insurance policies referred to in this Complaint must provide a complete defense to the PLAINTIFFS as to the claims asserted in the Underlying Matter and Defendant is obligated to provide a full and complete defense to PLAINTIFFS and to fully indemnify PLAINTIFFS up to policy limits for any settlement, award, or judgment.

## ON ALL CAUSES OF ACTION

7.    For costs of suit herein; and

8.    For all such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

PLAINTIFFS hereby demand a jury trial as provided by Rule 38(a) of the Federal Rule of Civil Procedure.


Dated:  July 22, 2019              MORRIS, SULLIVAN & LEMKUL, LLP


                                   By:   *s/Joseph L. Oliva*
                                   Joseph L. Oliva, Esq.
                                   oliva@morrissullivanlaw.com
                                   Ryan M. Simone, Esq.
                                   MORRIS, SULLIVAN & LEMKUL, LLP
                                   9915 Mira Mesa Boulevard, Suite 300
                                   San Diego, CA 92131
                                   Telephone: (858) 566-7600
                                   *Attorneys for Plaintiffs*

**PLAINTIFFS' COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF EXHIBITS**

| Exhibit | Description | Page |
|---------|-------------|------|
| **A** | A true and correct copy of Policy No. MH13471 | 38-286 |
| **B** | A true and correct copy of Policy No. MH14035 | 287-541 |
| **C** | A true and correct copy of Policy No. MH14460 | 542-805 |
| **D** | A true and correct copy of the Prop 65 Notice | 86-808 |
| **E** | A true and correct copy of the complaint in the Underlying Matter | 809-867 |
| **F** | A true and correct copy of the First Amended Complaint in the Underlying Matter | 868-97 |
| **G** | A true and correct copy of Senior Operations, LLC's third-party complaint in the Underlying Matter | 908-926 |
| **H** | A true and correct copy of Ametek, Inc. and Thomas Deeney's third-party complaint in the Underlying Matter | 927-946 |
| **I** | A true and correct copy of Defendant's July 14, 2017 e-mail | 947-948 |
| **J** | A true and correct copy of Plaintiff's July 14, 2017 e-mail | 949-950 |
| **K** | A true and correct copy of Defendant's July 14, 2017 e-mail | 951-952 |
| **L** | A true and correct copy of Defendant's August 2, 2017 denial letter | 953-964 |
| **M** | A true and correct copy of Plaintiffs' July 30, 2018 letter | 965-970 |

**PLAINTIFFS' COMPLAINT**