UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINGSLEY MANAGEMENT, CORP., a Utah Corporation; KMC CA MANAGEMENT, LLC, a Utah limited liability company; and VILLA CAJON MHC, L.P., a Utah limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, DBA NORTH CAROLINE OCCIDENTAL FIRE & CASUALTY COMPANY, a North Carolina corporation; and OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, a North Carolina corporation,<br><br>Defendants. | Case No.: 19-cv-1361-GPC-AGS<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[ECF No. 11]** |

Before the Court is Defendants' Occidental Fire & Casualty Company of North Carolina dba North Caroline Occidental Fire & Casualty Company and Occidental Fire & Casualty Company of North Carolina (collectively, "Defendants" or "Occidental")

1

motion to dismiss. ECF No. 11. Plaintiffs Kingsley Management Corporation, KMC CA Management, LLC, and Villa Cajon MHC, L.P. ("Plaintiffs") filed an opposition. ECF No. 16. Defendants filed a reply. ECF No. 17. The Court finds this motion suitable for decision without oral argument pursuant to Local Civil Rule 7.1(d)(1).

## BACKGROUND

Plaintiffs are corporate entities organized under the laws of the State of Utah that own, operate, and manage the Villa Cajon Mobile Home Estate, located at 255 East Bradley Avenue, El Cajon, CA 92021 ("Subject Insured Property"). ECF No. 4 ("First Amended Complaint" or "FAC") ¶¶ 1-5. Defendants are North Carolina corporations that provide the insurance policies that give rise to this litigation. *Id.* ¶¶ 6-8. Plaintiffs allege that Defendants have a duty to provide insurance coverage for the defense of claims in a class action lawsuit, *Cox et al., v. Ametek, Inc., et al.*, Case No. 3:17-CV-00579-GPC-AGS, filed in this Court on March 24, 2017 ("Underlying Action"). *Id.* ¶ 39.

**I.  Insurance Policies**

Defendants provided Plaintiff Kingsley Management with three policies, Policy No. MH13471, which covers the period December 31, 2014 until December 31, 2015 (FAC, Ex. A); Policy No. MH14035, which covers the period December 31, 2015 until December 31, 2016 (FAC, Ex. B); and Policy No. MH14460, which covers the period December 31, 2016 until December 31, 2017 (FAC, Ex. C) (collectively, the "Policies"). The Policies name Plaintiffs KMC Management, KMC CA Management and Villa Cajon as named insureds. FAC ¶ 17.

**a.  Coverage A**

Under Coverage A for "Bodily Injury and Property Damage Liability," the Policies provide liability coverage for allegations of "property damage" and "bodily injury" arising from an "occurrence." FAC ¶¶ 18-19; ECF No. 4-1 at 116; ECF No. 4-2 at 121; ECF No. 4-3 at 124. The Policies obligate Defendants to provide defense for any "suit" seeking "property damage" against Plaintiffs, in accordance with the following:

2

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages . . .

b. This insurance applies to 'bodily injury' and 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

(2) The 'bodily injury' or 'property damage' occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part. If such a listed insured or authorized 'employee' knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred, then any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period.

FAC ¶ 21. Coverage A also contains a Pollution Exclusion:

This insurance does not apply to:

f. Pollution

(1) 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants':

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured . . .

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

3

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the 'pollutants' are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor . . .

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, 'pollutants.'

FAC ¶ 22. The Policies contain an endorsement that modify the Coverage A Pollution Exclusion in the following manner:

This insurance does not apply to:

f. Pollution

(a) "Bodily Injury" or "property damage" which would not have occurred in whole or part ***but for*** the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

FAC ¶ 23 (emphasis added).

**b. Coverage B**

Under Coverage B, the Policies obligate Defendants to provide indemnity for any "personal and advertising injury" and obligates Defendants to provide a defense for any "suit" seeking damages for "personal and advertising injury." FAC ¶ 26. Coverage B provides:

4

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages . . .
>
> b. This insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period.

*Id.* Coverage B also contains the following Pollution Exclusion:

> A. Exclusion m. under Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability I replaced by the following:
>
> This insurance does not apply to:
>
>> a. "Personal and advertising injury";
>>
>> (10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, growth, or escape of "pollutants" at any time.
>
> B. The definition of "pollutants" under Section V – Definitions is replaced by the following:
>
>> "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, mold, fungi, bacteria, and other similar microbial contaminants, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

FAC ¶ 27.

### c. Other Coverage

The Policies also provide a Supplementary Payments coverage, which, in part, provides that Defendants will pay, with respect to a claim that settles or any suit against an insured "all expenses we incur" and "all court costs taxed against the insured in the 'suit.'" FAC ¶ 28.

///

### d. Terms

Under Coverage A, the Policies apply for a suit seeking "Property Damage" to tangible property. FAC ¶ 33. Under Coverage B, the Policies apply for a suit seeking "Personal Injury" under Coverage B, including nuisance and trespass. *Id.* Accordingly, any such claim or suit alleged against Plaintiffs will trigger Occidental's duty to defend and indemnify pursuant to the Policies.

The Policies define 'occurrence' as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." FAC ¶ 30.

The Policies define 'bodily injury' as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. *Id.* ¶ 31.

The Policies define 'personal and advertising injury' as inclusive of a claim for nuisance and/or trespass:

> 'Personal and advertising injury' means injury, including consequential 'bodily injury,' arising out of one or more of the following offenses . . . c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

*Id.* ¶ 31. The Policies define 'property damage' as follows:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

The Policies define "suit" as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." *Id.* ¶ 33.

/ / /

6

19-cv-1361-GPC-AGS

## II. Underlying Matter

On October 6, 2016, the California Department of Toxic Substances Control ("DTSC") issued a Proposition 65 Notification ("Prop 65 Notice") to the San Diego County Public Health Officer indicating that several chemicals considered human carcinogens were detected at 790 Greenfield Drive, El Cajon, California ("Contaminated Property"). ECF No. 4-4 at 2. The Prop 65 Notice states that Trichlorethylene (TCE) has been found in the groundwater and soil gas at the Contaminated Property and surrounding community. *Id.* at 3. Ametek, Inc. is listed as the responsible party and Plaintiffs are not mentioned in the Prop 65 Notice. FAC ¶ 37.

The plaintiffs in the Underlying Matter ("Putative Underlying Class") are all individuals who were either past or current residents of the Subject Insured Property. FAC ¶ 42. The Putative Underlying Class alleged that Ametek stored toxic waste at the Contaminated Property from 1968 to 1988, and that Ametek was aware in 1987 or 1988 that chlorinated solvents and other chemical waste leached and leaked into the groundwater and subsurface soil, thereby creating a groundwater plume. *Id.* ¶ 43-45. The Putative Underlying Class alleged they suffered bodily harm, economic loss, and interference with their use of and enjoyment of their homes and comfortable enjoyment of life. *Id.* ¶ 46, 47.

### a. Third Party Actions

On June 20, 2017, Senior Operations filed a third-party complaint against Plaintiffs in the instant action (i.e., Villa Cajon, KMC CA Management, and Kingsley Management), as well as the alleged owners of the other affected mobile home parks for indemnity, equitable contribution, and declaratory relief. *Id.* ¶ 55.

On June 27, 2017, Ametek and Thomas Deeney also filed a third-party complaint in the Underlying Matter against Plaintiffs in the instant action (i.e., Villa Cajon, KMC CA Management, and Kingsley Management) for indemnity, comparative contribution, and declaratory relief. *Id.* ¶ 59.

Senior Operations, Ametek, and Deeney allege that Plaintiffs purchased the Subject Insured Property in late 2009 and early 2010 and that Plaintiffs were or should have been aware of information about the environmental conditions of the Subject Insured Property, including the subject plume described in the Prop 65 Notice that gave rise to the Underlying Matter. *Id.* ¶ 56, 60. Senior Operations, Ametek, and Deeney did not allege that Plaintiffs were responsible for the actual acts of pollution that gave rise to the Underlying Matter. *Id.* ¶ 58, 62.[1] Plaintiffs allege that at no point did any party in the Underlying Matter allege that Plaintiffs created or caused the environmental pollution event that affected the Subject Insured Property and gave rise to the Underlying Matter. *Id.* ¶ 63-71.

## III. Requests for Insurance Coverage

On June 20, 2017, Plaintiffs notified Occidental of the Underlying Matter and requested a defense and indemnity pursuant to the Policies. *Id.* ¶ 73. On the same day, Occidental's third-party claims administrator, Innovative Risk Management, requested a copy of the complaint in the Underlying Matter. *Id.* ¶ 74.

On July 14, 2017, Occidental requested information regarding the date on which Villa Cajon and Kingsley Management were served with the complaint in the Underlying Matter. *Id* ¶ 75. On the same day, Plaintiffs emailed Occidental and requested that Occidental coordinate with Plaintiffs to defend the pleadings in the Underlying Matter on behalf of all three Plaintiffs. *Id.* ¶ 76. Defendants replied and asked Plaintiffs whether they had hired an attorney "to protect the answer date or has it just been reported to [Defendants]?" *Id.* ¶ 77.

On August 2, 2017, Innovative Risk Management issued a letter acknowledging

---

[1] The third-party defendants in the Underlying Matter moved to dismiss these third-party complaints and the Court denied these motions, except with respect to the claims for attorney's fees under CA law. *Cox v. Ametek*, Case No. 17cv0597-GPC-AGS, ECF No. 59.

the claims against Plaintiffs in the Underlying Matter, and on the same day, Occidental denied coverage on the basis of the Pollution Exclusion from the Policies.

On July 30, 2018, Plaintiffs' counsel responded to the denial letter, providing additional information as to why the Pollution Exclusion was inapplicable since no party in the Underlying Matter had alleged that Plaintiffs were involved in any environmental pollution event. *Id.* ¶ 81. As of the date of the filing of the FAC, Occidental had not responded to this communication from Plaintiffs' counsel. *Id.* ¶ 83.

Plaintiffs allege that they have incurred substantial attorneys' fees and costs as a result of defending the Underlying Matter, and Defendants' denial of insurance coverage forced Plaintiffs to forego benefits that they were entitled to under the Policies. *Id.* ¶ 87-89. Plaintiffs have entered into a tentative settlement of the Underlying Matter, and this settlement is subject to further negotiations between Ametek and the Putative Underlying class. *Id.* ¶ 90-92. Plaintiffs allege that their decision to enter into this settlement was a consequence of Occidental's failure to defend, since Plaintiffs were required to pay out-of-pocket defense fees and costs, which are in excess of $75,000. *Id.* ¶ 98, 99. Plaintiffs additionally argue that Occidental's denial of coverage was "designed to force Plaintiffs to forego benefits under the respective policies." *Id.* ¶ 102.

Plaintiffs allege causes of action for breach of contract based on Occidental's failure to defend and failure to indemnify; breach of implied covenant of good faith and fair dealing for failure to defend and failure to indemnify; and declaratory relief. Defendants move to dismiss on all counts.

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required

only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

## I. Breach of Contract – Duty to Defend

Occidental argues that it had no duty to defend Plaintiffs because there is no potential for coverage of Plaintiffs' claims due to the pollution exclusion clauses in the Policies' as articulated in both Coverage A and Coverage B. Plaintiffs counter that they are entitled to coverage under the Policies because the Policies are silent on whether the pollution exclusion clauses can apply regardless of the location of the environmental pollution event and the insured's lack of involvement with causing the pollution, and in the face of this ambiguity, the contract must be construed against Occidental.

Under California law, the elements required for a cause of action for breach of contract are: (1) the existence of a contract, (2) plaintiffs' performance or excuse of nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Reichert*

*v. General Ins. Co.,* 442 P.2d 377 (Cal. 1968); *McDonald v. John P. Scripps Newspaper,* 210 Cal.App.3d 100, 104 (1989). "Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003) (citing *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995)). "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties." *Id.* "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.*

A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. *Montrose Chemical Corp. of Cal. v. Superior Court*, 6 Cal.4th 287, 295 (1993) (en banc). The existence of a duty to defend turns upon the facts known to the insurer at the inception of the lawsuit, not upon the ultimate adjudication of coverage. *Id.* (quoting *Saylin v. Cal. Ins. Guarantee Ass'n*, 179 Cal.App.3d 256, 263 (1986)); *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir.1988)). The duty to defend arises if the facts known to the insurer indicate a potential or possibility for indemnity. *Montrose*, 6 Cal.4th at 300. An insurer has no duty only if, at the time of its decision, it can prove that the claim cannot fall within policy coverage. *Id.*

### a. Pollution Exclusion

The parties disagree as to whether the Pollution Exclusion clauses in both Coverage A and Coverage B exclude the Underlying Matter from coverage.

Exceptions to the performance of the basic underlying contract obligation must be clearly stated to apprise the insured of the effect of those exceptions. *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 269 (1966). "Whereas coverage clauses are interpreted broadly to afford the greatest possible protection to the insured, exclusionary clauses are construed narrowly against the insurer." *Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir. 1985). Therefore, "[a]ny doubt as to whether the facts give rise to a duty to defend is resolved in favor of the insured." *Legarra v. Federated Mut. Ins. Co.*,

11

35 Cal. App. 4th 1472, 1479 (1995). "Courts may not rewrite the insurance contract or force a conclusion to exact liability where none was contemplated." *Id*. at 1480. An insurer may select the risks it will insure and those it will not, and a clear exclusion will be respected. *Howell v. State Farm Fire & Casualty Co*., 218 Cal.App.3d 1446, 1467 (1990).

First, it is undisputed that "pollutant" covers the chemicals at issue in the underlying claims – i.e., trichlorethylene, dichlorethene, dioxane, and trichloroacetic acid. ECF No. 11-1 at 18. The parties, however, dispute whether the relevant pollution exclusions from both Coverage A and Coverage B preclude insurance coverage of the Underlying Matter. Defendants argue that Coverage A and/or Coverage B's pollution exclusions apply to this case and that the key language from both exclusion clauses (i.e., "but for" and "arising from") should be broadly construed, and furthermore that the exclusion does not require that the act of pollution (i.e., discharge, seepage, etc.) take place by a specific actor, including the insured. ECF No. 11-1 at 18. Plaintiffs counter that there is no plain, clear, or conspicuous language in the exclusion that reflects "in an unmistakable manner" that the exclusion will apply to an "(a) offsite release, (b) where the insured did not cause the pollution condition, and (c) the pollution is unrelated to the insured's business activities." ECF No. 16 at 14.

### i. Coverage A

As described above, Coverage A's Pollution Exclusion clause states that the insurance does not apply to bodily injury or property damages "which would not have occurred in whole or part *but for* the actual, alleged or threatened discharge, dispersal, migration, release or escape of 'pollutants' at any time." FAC ¶ 23 (emphasis added). Plaintiffs argue that this exclusion does not make clear that it applies to offsite activities or to acts that are independent of the insured's operations.

The Defendants rely on *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480 (2005), to support their argument that the "but for" language provides a clear

12

coverage exclusion. In *Garamendi*, the court held that a pollution exclusion which provided that the insurance did not apply to bodily injury which would not have occurred in whole or part "but for" the act of pollution indicated that this exclusion was "far broader" than a prior exclusion that used "arising out of" language. *Id.* at 487. The court found that the "but for" language shifted the focus from actions taken to injuries that would not have occurred "but for" the discharge of pollutants. *Id.* As a result, the exclusion encompassed products liability claims since the injuries at issue would not have occurred "but for" the discharge of the pollutant. *Id.* at 488. Here, Coverage A's Pollution Exclusion extends a similarly broad reach and excludes coverage for damages that would not have occurred "but for" the discharge of the pollutant.

Parties also disagree as to whether the deletion of the phrase "at or from" in Coverage A's pollution exclusion clause broadens or narrows its scope. The *Garamendi* court noted that the use of "but for" created a "far broader" exclusion clause than the version that encompassed only "bodily injury . . . *at or from* any premises, site or location" owned by the insured. *Id.* at 487 (emphasis added). Therefore, the Court finds that the use of the phrase "but for" is decisive in determining that the scope of the pollution exclusion clause is broad enough to encompass the allegations against Plaintiffs in the Underlying Matter. Since Coverage A's pollution exclusion clause, as drafted, focuses on the injuries that were sustained, rather than the site of pollution, the clause clearly encompasses the claims brought against Plaintiffs in the Underlying Matter, regardless of whether the damages were due to offsite discharge or independent of the insured's operations. Accordingly, the Court finds that Defendants did not have a duty to defend based upon Coverage A. In the section that follows, the Court considers the whether there was a duty to defend under Coverage B.

### ii. Coverage B

Defendants next argue that the Court should construe the "arising out of" language in Coverage B similar to the "but for" language. However, this position is wholly

13

unsupported under California law.

Defendants cite *Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076 (9th Cir. 1985) for the proposition that "arising out of" language is as broadly construed as the "but for" exclusion in *Garamendi*. ECF No. 11-1 at 21-22. In *Cont'l Cas. Co.*, the question considered by the Ninth Circuit was distinct from the question presented here. The *Cont'l Cas. Co.* complaint alleged that police officers assaulted and beat the plaintiffs' father to death, and that this conduct was part of a pattern and practice of police brutality caused by the City's failure to properly train its employees. *Id.* The plaintiffs brought due process, equal protection, and excessive force claims based on the alleged wrongful death of their father. The Ninth Circuit held that the wrongful death allegations "arose out of" alleged bodily injury and wrongful death, and therefore were excluded under the applicable exclusionary clause in the policy which provided that the insurance company "would not be liable on any claim arising from the bodily injury, assault, battery, or death of any person." *Id.* at 1078.

Here, the causal chain between the allegations in the Underlying Matter and Plaintiffs' liability is far more attenuated than the chain in *Cont'l Cas. Co.* since the claims against Plaintiffs are based on Plaintiffs' failure to act on their knowledge of the pollution, rather than their alleged contribution to the act of pollution itself. Occidental has not cited, any case law counseling a broad approach to the phrase "arising out of" in a context similar to the situation in the present litigation. Moreover, as noted in the previous section, the *Garamendi* court has recognized that "but for" exclusions provide a far broader reach than "arising out of" exclusions. This holding supports a narrow reading of "arising out of" in Coverage B in a constrained manner against the insurer.

In addition, Coverage B can be better analyzed through the lens of *MacKinnon*, where the California Supreme Court held that a landlord's use of pesticides at the tenant's request did not qualify as the type of environmental pollution that should be excluded from coverage since the applicable pollution exclusion clause did not "plainly and

14

clearly" exclude the landlord's conduct from coverage. In making this decision, the *MacKinnon* court "declined to extend the [pollution] exclusion beyond" the "arena" of potential liability arising from "the gradual or repeated discharge of hazardous substances into the environment." *Id.* at 646.

Occidental argues that *MacKinnon* does not help Plaintiffs because the *MacKinnon* court was only concerned with the questions of whether the type of hazardous substance qualifies as pollution and whether the geographical scope of the contamination merits exclusion from insurance coverage, but did not consider the questions relevant this instant litigation – i.e., whether the exclusion applies to pollution where the insured did not engage in the polluting. Moreover, Occidental argues that *MacKinnon*'s reasoning applied to the current litigation would cut against Plaintiffs since the plume clearly involved hazardous substances and the geographical scope of the Plume's pollution was significant in size. ECF No. 11-1 at 25.

However, Occidental has failed to reckon with the *MacKinnon* court's overarching encouragement for courts to adopt a reading of the case as it could be understood by a lay person and avoid adopting an interpretation of the pollution exclusion that would lead to "absurd results." *MacKinnon*, 31 Cal.4th at 640. Here, the Pollution Exclusion in Coverage B goes to great lengths to define the nature of the pollution as the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" FAC ¶¶ 23, 27. Adopting a lay person's reading of this exhaustive list, the language of the Coverage B Pollution Exclusion is tailored to address the act of the polluter. In *MacKinnon*, the court specifically noted that "certain acts of ordinary negligence" should be covered by the insurance policy unless the pollution exclusion "*conspicuously*, *plainly* and *clearly* apprises the insured that certain acts of ordinary negligence . . . will not be covered." *Id.* at 649 (emphasis added). Here, the language of the pollution exclusion does not conspicuously, plainly, or clearly apprise Plaintiffs that their failure to notify the residents of the Subject Insured Property of pollution would be

15

encompassed by this exclusion.  In the Underlying Matter, the third-party complaint alleges that Plaintiffs had a duty to "deal honestly with [the residents] . . . in negotiating lease agreements and disclosing information or concerns."  FAC, Ex. G at 921.[2] Therefore, if the Court were to adopt a reading of the exclusion that Defendants offer, the Court would be at risk of extending the pollution exclusion beyond a layperson's understanding of the pollution exclusion.  The Court finds there was a duty to defend based upon Coverage B and therefore **DENIES** Defendant's motion to dismiss.

### 1. Context of Operations and Intent of the Exclusion

Parties additionally disagree as to whether and how the Court should consider the context of the insured's operations and the intent of the pollution exclusion clause.  Plaintiffs argue that the since pollution exclusion clause does not specify that it covers offsite discharge or activities that are independent of insured's operations, it should not apply here.  Plaintiffs cite several out-of-state cases and argue that their reasoning is in line with *MacKinnon* since the *MacKinnon* court explained that pollution exclusions apply to "traditional environmental events that the insured be involved in the polluting activity in the absence of language to the contrary."  ECF No. 16 at 27.

Out-of-state courts are divided on the matter.  In addition to the cases that Plaintiff cites (ECF No. 16 at 26-27), the Court also considers *Payne v. U.S. Fid. & Guar. Co.*, 625 F. Supp. 1189, 1193 (S.D. Fla. 1985) where an insured property owner knew that their property was polluted but did not attempt to control or contain the spread of the pollutants.  The *Payne* court found that the owner was still entitled to insurance coverage (despite the presence of a pollution exclusion clause) since, as the court pointed out, it was not alleged that the insureds were commercial or industrial enterprises, that they generated the hazardous substances, or disposed such substances as a natural and usual

---

[2] Due to the illegibility of the ECF pagination, the pagination referred to here is the internal Bates page numbering.

16

part of its business. *Id.* ("Because the pollution did not result from the regular course of the insured's business" the pollution was not excluded from coverage).[3]

Defendants counter by citing two New York state cases where the pollution exclusion precluded coverage, even where the policyholder was blameless in causing the pollution: *Budofsky v. Hartford Ins. Co.*, 556 N.Y.S.2d 438 (Sup. Ct. 1990) and *Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 308 (1996). However, in *Budofsky*, the court noted that the pollution exclusion specifically stated that the insurance would not apply to pollution damages to the premises owned by the insured. *Budofsky*, 556 N.Y.S.2D at 440. The *Harrison* court similarly noted that the coverage was "unambiguously excluded" for claims generated by the dumping of waste materials onto complainants' properties. *Harrison*, 89 N.Y.2d at 316.

Ultimately, since the Court has already denied the motion to dismiss on the basis of the reasoning above, the questions of the context of insured's operations and the pollution exclusion's intent are not determinative. However, the Court nevertheless notes that Plaintiffs' position is generally supported by the historical analysis provided in *MacKinnon* regarding the general intent of the inclusion of pollution exclusion clauses. The *MacKinnon* court included an instructive historical analysis of the development of the pollution exclusion clause, noting that it developed as a result of the implementation of more stringent anti-pollutions laws between 1966 and 1980, which put further pressure on insurance underwriters as they dealt with environmental clean-up and disasters claims. *MacKinnon*, 73 P.3d at 1210. In light of these enhanced pollution standards, the court explained, insurance companies began to tailor their policies to exclude pollution-related

---

[3] Plaintiffs cite *Griffin Dewatering Corp. v. N. Ins. Co. of New York*, 176 Cal. App. 4th 172, 201 (2009), noting that there the court held that the pollution exclusion did not apply where the insured was not involved in the pollution activity. However, the *Griffin* court did not base its analysis on the insured's lack of involvement in the act of pollution, but instead focused on the insurer's reasonable denial of coverage given the lack of case law on the question at the time.

17

19-cv-1361-GPC-AGS

injuries. *Id.* Plaintiffs argue that the overall policy within the insurance industry shows that the intent of pollution exclusions generally is to prevent coverage for persistent polluters and to penalize the polluters who handled toxic materials without proper precautions. ECF No. 16 at 27-30. Occidental, however, counters that insurance policies have excluded coverage for earthquakes or floods and therefore Plaintiffs' reasoning does not apply. ECF No. 17 at 8. In light of this historical analysis provided in *MacKinnon*, the Court is inclined to agree with Plaintiffs in that Coverage B's pollution exclusion was intended to exclude the acts of persistent polluters and the Court would therefore be expanding the historical intent of the pollution exclusion clause by including the acts of parties that did not engage in any act of pollution.

## II. Other Claims

Occidental argues that Plaintiffs' causes of action on the duty to indemnify must also be dismissed since they rely on a finding of a duty to defend; that Plaintiffs' third and fourth causes of action for breach of implied covenant of good faith and fair dealing should be dismissed because Occidental did not breach the policy; and that the fifth cause of action for Declaratory Relief should also be denied since there is no actual controversy since Occidental did not have a duty under the Policies. Since the Court has denied the motion to dismiss with respect to the question of Occidental's duty to defend, the motion to dismiss as to the other causes of action is also **DENIED**.

**IT IS SO ORDERED.**

Dated: February 28, 2020

Hon. Gonzalo P. Curiel
United States District Judge